Hillsborough
No. 82-475

## Mary L. Strobel

### v.

## John S. Strobel

June 7, 1983

*Field & Drury*, of Lowell, Massachusetts, and *Maurice P. Mason, Jr.*, of Lowell, Massachusetts (*John C. Donohoe, Jr.*, and *Mr. Mason* on the brief, and *Mr. Donohoe* orally), for the plaintiff.

*George J. Basbanes*, of Lowell, Massachusetts, by brief and orally, for the defendant.

DOUGLAS, J.   This marital case involves an appeal from an order of the Superior Court (*Bean*, J.) approving a master's recommendation and finding the defendant in contempt for nonpayment of alimony to the plaintiff. The issues presented are whether the dismissal of the plaintiff's prior support petition by a Massachusetts court barred the plaintiff from maintaining this contempt petition in a New Hampshire court, and whether the Master (*Larry B. Pletcher*, Esq.) correctly found that the parties' 1974 divorce decree was not governed by the three-year alimony limitation contained in RSA 458:19 as construed prior to its 1981 amendment. We affirm.

The case was submitted to this court on an agreed statement of facts. After twenty-four years of marriage, the plaintiff, Mary Strobel, and the defendant, John Strobel, were divorced in Hillsborough County Superior Court in 1974. The parties have five children, three of whom were still minors at the time of the divorce. The divorce decree, which incorporated the parties' stipulations, included separately numbered paragraphs for child support and alimony:

"3. The libelant [John Strobel] is ordered to pay, from his estate and earnings, for the support of the minor children of the parties, the sum of $450.00 per month, on

the 15th day of each month, commencing on January 15, 1974; payments for child support shall continue until the youngest child of the parties reaches the age of 18 years or graduates from High School, whichever event is last to occur, provided however, at the time the first minor child of the parties reaches the age of 18 years or graduates from High School, whichever event is last to occur, the monthly payment shall be reduced by $100.00; and provided further, that when the second minor child of the parties reaches the age of 18 years or graduates from High School, whichever event is last to occur, the monthly payment shall be reduced by an additional $150.00.

4. The libelant is ordered to pay from his estate and earnings, as alimony for the support of the libelee [Mary Strobel], the sum of $350.00 per month, on the 15th day of each month commencing January 15, 1974."

In 1979, three years after the youngest Strobel child had reached the age of majority, the defendant, who was then residing in Chelmsford, Massachusetts, ceased making alimony payments. On March 21, 1980, the plaintiff responded by filing a support petition under the Uniform Reciprocal Enforcement of Support Act (URESA) in the District Court of Lowell, Massachusetts. *See generally* MASS. GEN. LAWS ANN. ch. 273A, §§ 1–17 (West 1970). That court summarily dismissed her petition, issuing neither an opinion nor an order.

On July 23, 1982, the plaintiff filed the instant contempt petition in Hillsborough County Superior Court for nonpayment of alimony. Because the 1981 legislative amendment to RSA 458:19 makes alimony payable for not more than three years after the youngest child reaches the age of majority and applies the three-year limit to all preexisting alimony agreements, effective August 15, 1982, *see* Laws 1981, 275:2, the plaintiff sought accumulated alimony payments only until that date. It is undisputed that the amount at issue is $12,600. On October 4, 1982, the superior court approved the master's recommendation that the plaintiff's contempt petition be granted, and the defendant appealed.

■■ We first address the defendant's claim that the Massachusetts district court's dismissal of the plaintiff's URESA petition was res judicata regarding the defendant's liability for alimony after the parties' youngest child turned eighteen years old in 1976. "The doctrine of res judicata prevents the parties from relitigating matters actually litigated and matters that could have been litigated in the first action." *Scheele v. Village District*, 122 N.H. 1015, 1019, 453 A.2d 1281, 1283 (1982). A party invoking res judicata as an affirma-

tive defense carries the burden of proof as to the identity of issues and the finality of their determination. 46 AM. JUR. 2d *Judgments* § 607, at 763 (1969); 50 C.J.S. *Judgments* §§ 841–42, at 408–09 (1947); *see State v. Hastings*, 121 N.H. 465, 467, 430 A.2d 1131, 1132 (1981).

In the instant case, the defendant introduced as evidence, to support his res judicata defense, a photostatic copy of the Massachusetts district court docket sheet. In relevant part, the docket sheet states: "March 21, 1980 Petition for order of support received from: Superior Court, Hillsboro [sic] County, Nashua N.H. . . . 6/4/81 . . . Dismissed by order [of] Court (No action taken on Motions) . . . ." From these notations, the defendant asked the court below to infer that the dismissal involved the identical issue as the case at bar and constituted a decision on the merits. We find such meager evidence to be legally insufficient to satisfy the defendant's burden of proof of the res judicata effect of the Massachusetts district court's dismissal.

Furthermore, the record indicates that the plaintiff instituted an action in the Massachusetts probate and equity court in 1982, the year after the Massachusetts district court dismissed her URESA petition. This second Massachusetts action was also dismissed, but with an accompanying order stating:

> "Under the circumstances of this case, and on the representations of the defendant that he will submit himself to the jurisdiction of the New Hampshire Superior Court, this Court declines to exercise jurisdiction as a matter of forum non conveniens, and refers the matter to the appropriate Court in the State of New Hampshire."

The fact that the second Massachusetts action was dismissed based on *forum non conveniens*, not res judicata, and that the defendant represented that he would submit to the jurisdiction of the New Hampshire courts, contradicts the defendant's assertion that the dismissal of the plaintiff's first support action in Massachusetts was res judicata barring the New Hampshire contempt action. Accordingly, we find no error in the master's determination that the Massachusetts district court action did not bar the action now before us.

The defendant next argues that the master erred when he interpreted the parties' divorce decree as not falling within the three-year limitation on alimony pursuant to former RSA 458:19. That statute, as it existed at the time of their divorce in 1974, provided:

> "Upon a decree of nullity or divorce, the court may restore to the wife all or any part of her estate, and may assign to her such part of the estate of her husband, or order him to pay such sum of money, as may be deemed just, provided that *in cases in which no children are*

> *involved, or in which the children have reached the age of*
> *majority, said order shall be effective for not more than*
> *three years from the date thereof,* but such order may be
> renewed, modified or extended if justice requires for peri-
> ods of not more than three years at a time . . . ."

Laws 1937, 154:1 (emphasis added).

■■ Under New Hampshire case law construing RSA 458:19 prior to its 1981 amendment, it is well settled that "[w]here the decree affects both wife and child, the three year time limit is not effective," and the alimony decree remains in effect until modified. *Lund v. Lund,* 96 N.H. 283, 285, 74 A.2d 557, 559 (1950). In order to determine whether a given decree is to be read as affecting *both* wife and child so that "children are involved" within the meaning of the statute, this court has required that "[t]he decree is to be considered in its entirety and the provisions relating to the wife and the children are not to be construed as separate and distinct unless specifically made so by the terms of the decree itself." *Id.,* 74 A.2d at 559; *see Ployer v. Ployer,* 110 N.H. 338, 339, 266 A.2d 848, 849 (1970); C. DOUGLAS, 3 NEW HAMPSHIRE PRACTICE, FAMILY LAW § 378 (1982).

The defendant asserts that because the child support and alimony provisions of the parties' 1974 divorce decree are independent of each other as to time and amount of payment, and because those provisions are set forth in separately numbered paragraphs of the decree, the child support and alimony obligations are "separate and distinct." Therefore, the defendant contends that the three-year limitation on alimony established by former RSA 458:19 applies to the instant decree and thus bars the plaintiff's contempt action. We disagree.

■ If we were writing on a "clean slate," we might be inclined' toward the defendant's position, which rests upon a straightforward reading of the 1974 decree. However, *Lund* and *Ployer* are clearly contrary to the defendant's reading of the statute. The decree stipulated to by the plaintiff and the defendant in its entirety clearly affected both the wife and the minor children. In addition, there was no express statement by the parties that the provisions for alimony and child support were to be considered separate and distinct. Because under *Lund* and *Ployer* such provisions must "specifically" be made independent "by the terms of the decree itself," *Lund v. Lund,* 96 N.H. at 285, 74 A.2d at 559, we find the alimony and child support provisions of the parties' divorce decree not to be separable.

■ We therefore conclude that, since the decree involved minor children, the alimony provision therein is not governed by the three-

year limit in RSA 458:19 as that statute existed prior to its 1981 amendment. Accordingly, the master correctly determined that the alimony statute did not bar the plaintiff's contempt petition for non-payment of alimony.

*Affirmed.*

KING, C.J., and BATCHELDER, J., did not sit; the others concurred.